IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ABP PEARL HIGHLANDS LLC, | ) | CIVIL NO. 25-00154 JAO-WRP |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO GRANT |
| vs. | ) | IN PART AND DENY IN PART |
| | ) | PLAINTIFF'S MOTION FOR |
| TIGO ENERGY, INC., | ) | DEFAULT JUDGMENT |
| | ) | |
| Defendant. | ) | |
| | ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Before the Court is Plaintiff ABP Pearl Highlands LLC's (Plaintiff)

Motion for Default Judgment (Motion) filed on June 9, 2025.  See Motion, ECF

No. 15.  Defendant Tigo Energy, Inc. (Defendant) did not respond to the Motion.

Plaintiff filed a reply memorandum on July 8, 2025.  Reply, ECF No. 16.  The

Court finds this Motion suitable for disposition without a hearing pursuant to Rule

7.1(c) of the Local Rules of Practice of the United States District Court for the

District of Hawai'i.  After careful consideration of the record in this action and the

relevant legal authority, the Court FINDS AND RECOMMENDS that Plaintiff's

Motion be GRANTED IN PART AND DENIED IN PART.[1]

---

[1] Within fourteen days after a party is served with the Findings and
Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written
objections in the United States District Court.  A party must file any objections

## FACTUAL BACKGROUND

Plaintiff is the fee simple owner of Pearl Highlands.  See Complaint, ECF No. 1 at ¶ 12.  Plaintiff currently leases the solar photovoltaic energy system (System) at Pearl Highlands from its owner, First Hawaiian Leasing, Inc. (FHL).  See id. at ¶¶ 12-13.  The claims in this lawsuit arise out of allegedly defective and dangerous rapid shutdown devices (RSDs) designed, manufactured, marketed, and distributed by Defendant, and installed in the photovoltaic System at Pearl Highlands.  See id. at ¶ 11.

On October 28, 2021, Plaintiff, FHL and another entity entered into a contract to construct the System.  See id. at ¶ 14.  Under the terms of the contract, SunPower commercial solar panels were installed in the System.  See id. at ¶ 15.  The solar panels incorporated Defendant's RSDs as a safety component.  See id. at ¶ 16; Motion, ECF No. 15-1 at 8 n.2.  RSDs are fire safety devices installed on the back of solar modules that are intended to turn off or rapidly reduce voltage when necessary.  See Complaint, ECF No. 1 at ¶¶ 19-20.

On October 28, 2021, Plaintiff and FHL executed a lease, whereby FHL agreed to lease the System to Plaintiff upon completion.  See id. at ¶ 17.  Under the terms of the lease, FHL also assigned to Plaintiff all rights to any

_____

within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

manufacturer or vendor warranties on the System.  See id.  The lease further required that all claims or actions under any such warranties shall be made by Plaintiff.  See id.

On September 7, 2022, the solar panels were installed in the System. See id. at ¶ 18.

On March 21, 2024, Plaintiff received a Technical Notification (Notice) from SunPower, which stated that the same model of RSDs installed in Plaintiff's System were failing at other commercial sites and were under investigation in connection with two roof fires.  See id. at ¶¶ 27-28.  The Notice further stated that SunPower had received additional reports of fire and thermal damage related to the RSDs, including incidents involving deformation, heat exposure, and smoke damage to the RSDs.   See id. at ¶ 28.

Shortly after receiving this Notice, on March 24, 2024, two of Defendant's RSDs that were installed in the System melted, overheated, combusted and/or ignited, causing a critical failure in the System (Failure).  See id. at ¶ 31.  The two defective RSDs were significantly deformed, charred, melted, and burned, and showed signs of heat, fire, and/or smoke damage similar to the damage reported in the Notice.  See id. at ¶ 32.  The Failure resulted in a total shutdown of the System, and thermal and/or fire damage to the System.  See id. at ¶ 31.  As a direct result of the Failure, Plaintiff was forced to shut down a portion of the

System to prevent further fires and mitigate the danger of death, personal injury, and/or property damage created by the RSDs.  See id. at ¶ 34.

On December 13, 2024, Plaintiff sent a letter to Defendant, notifying it of the Failure and the resulting shutdown.  See id. at ¶ 35.  Plaintiff demanded that Defendant reimburse it for the costs incurred in removing and replacing the defective RSDs installed in the System, as well as for the energy production losses resulting from the partial and complete shutdowns of the System.  See id. at ¶ 36.  Defendant did not respond.  See id.

On February 19, 2025, Plaintiff issued a second letter to Defendant, reaffirming its position that the defective RSDs posed a serious safety risk.  See id. at ¶ 37.  Plaintiff reiterated its previous demands for reimbursement related to the removal and replacement of the defective RSDs and for losses stemming from the System shutdowns.  See id.  Again, Defendant did not respond.  See id.

Plaintiff thereafter removed and replaced Defendant's RSDs at a total cost of $84,607.00.  See Motion, ECF No. 15-1 at 10 n.4; Declaration of Brad Santiago (Santiago Decl.), ECF No. 15-2 at ¶ 10; Proposal from Titrium3, ECF No. 15-12; Notice to Proceed, ECF No. 15-13; Capital and One Time Service Agreement, ECF No. 15-14 at 1-2, 12.  Plaintiff also suffered lost energy production from the total and partial shutdowns of the System in an amount

totaling $62,603.12.  See Complaint, ECF No. 1 at ¶ 41; Santiago Decl., ECF No. 15-2 at ¶ 13; Ex. L, ECF No. 15-15.

## PROCEDURAL BACKGROUND

On April 11, 2025, Plaintiff filed the Complaint against Defendant, asserting claims for: (1) negligence due to product defect (Count I); (2) negligence due to failure to warn (Count II); (3) strict product liability (Count III); (4) breach of the implied warranty of merchantability (Count IV); (5) breach of the implied warranty of fitness for particular purpose (Count V); and (6) breach of express warranty (Count VI).  The Complaint prays for, among other things, actual, general, special, treble, consequential, and punitive damages.  See Complaint, ECF No. 1 at 17.  Plaintiff also seeks pre-judgment and post-judgment interest, as well as its costs, expenses, and attorneys' fees incurred in this matter.  Id.

Defendant was served on April 14, 2025.  See Proof of Service, ECF No. 11.  After Defendant failed to respond to the Complaint, default was entered against it on May 7, 2025.  See Entry of Default, ECF No. 13.

The present Motion for Default Judgment followed, in which Plaintiff seeks default judgment as to all claims in the Complaint.

## DISCUSSION

Default judgment may be entered if the defendant has defaulted by failing to appear.  See Fed. R. Civ. P. 55(b).  The grant or denial of a motion for

default judgment is within the discretion of the court.  <u>Haw. Carpenters' Trust Funds v. Stone</u>, 794 F.2d 508, 511-12 (9th Cir. 1986).  Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible.  <u>Eitel v. McCool</u>, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court should consider the following factors in deciding whether to grant a motion for default judgment:

> (1)  the possibility of prejudice to the plaintiff;
> (2)  the merits of plaintiff's substantive claim;
> (3)  the sufficiency of the complaint;
> (4)  the sum of money at stake in the action;
> (5)  the possibility of a dispute concerning material facts;
> (6)  whether the default was due to excusable neglect; and
> (7)  the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

<u>Id.</u> at 1471-72 (citation omitted).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting <u>Geddes v. United Fin. Grp.</u>, 559 F.2d 557, 560 (9th Cir. 1977)).  The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled.  <u>See</u> <u>Fair Hous. of Marin v. Combs</u>, 285 F.3d 899, 906 (9th Cir. 2002).  Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  <u>Cripps v. Life Ins. Co. of N.</u>

6

Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978)).

### A. Jurisdiction

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether or not it has subject matter jurisdiction over this action and personal jurisdiction over Defendant.  See <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

This Court has diversity jurisdiction over Plaintiff's claims.  See 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States[.]").  Plaintiff is a citizen of Hawaii, <u>see</u> Complaint, ECF No. 1 at 2-3; Motion, ECF No. 15-1 at 14, and Defendant is a citizen of both Delaware and California.  See Complaint, ECF No. 1 at 3; Motion, ECF No. 15-1 at 14.  The amount in controversy also exceeds $75,000, exclusive of interests and costs.  See Complaint, ECF No. 1 at 4.  Accordingly, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

The Court also has personal jurisdiction over Defendant because it

was properly served in accordance with the Federal Rules of Civil Procedure

(FRCP).  See Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1135

(9th Cir. 2009) ("A federal court is without personal jurisdiction over a defendant

unless the defendant has been served in accordance with [FRCP] 4." (citations

omitted)); see also Proof of Service, ECF No. 11.

### B. Eitel Factors

Following a determination that jurisdiction is proper, the Court must

consider whether default judgment is appropriate under the Eitel factors outlined

above.

### 1. The Possibility of Prejudice to Plaintiff

The first factor considers whether Plaintiff would suffer prejudice if

default judgment is not entered.  See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp.

2d 1172, 1177 (C.D. Cal. 2002).  Defendant has not defended against Plaintiff's

claims in this case at all.  Defendant neither responded to the Complaint nor

entered an appearance in this case.  Absent entry of default judgment against

Defendant, Plaintiff would be without recourse for recovery against it.  Therefore,

the first Eitel factor favors default judgment.

### 2. Merits of Plaintiff's Substantive Claims

As noted above, for purposes of liability, the factual allegations in the

complaint are taken as true on default.  See TeleVideo Sys., Inc., 826 F.2d at 917-

18; Fair Hous. of Marin, 285 F.3d at 906.  In the present Motion, Plaintiff seeks

default judgment against Defendant as to all claims asserted in the Complaint.

### a. Product Liability Claims (Counts I, II, and III)

The Complaint asserts claims for negligence based on a product

defect (Count I), negligence based on a failure to warn (Count II), and strict

liability (Count III).  Under Hawaii law, "a products liability claim based on

either negligence or strict liability has three elements: (1) a duty to anticipate

and design against reasonably foreseeable hazards; (2) breach of that duty;

and (3) injury proximately caused by the breach."  Tabieros v. Clark Equip.

Co., 85 Haw. 336, 370, 944 P.2d 1279, 1313 (1997) (citation, internal

brackets, and emphasis omitted).  "In negligence, the plaintiff must show that

the defendant breached its duty of care, while in strict liability the plaintiff

must show that the product was defective because it was unreasonably

dangerous."  Wagatsuma v. Patch, 10 Haw. App. 547, 564, 879 P.2d 572, 583

(1994).

As to the duty of care in negligent design and/or strict liability

claims, manufacturers have the "legal duty . . . to exercise reasonable care in

the design and incorporation of safety features to protect against foreseeable

dangers."  Tabieros, 85 Haw. at 354, 944 P.2d at 1297 (citing Ontai v. Straub

Clinic and Hosp., Inc., 66 Haw. 237, 247, 659 P.2d 734, 742 (1983)).  For

failure to warn claims, manufacturers owe a duty to "give appropriate warning of any known dangers which the user of its product would not ordinarily discover." Acoba v. Gen. Tire, Inc., 92 Hawai'i 1, 18, 986 P.2d 288, 305 (1999). As the manufacturer, designer, marketer and distributor of the RSDs, which are fire safety devices designed to guard against foreseeable dangers, Defendant owes Plaintiff both of these duties.

Regarding the breach of duty element, "[i]n a negligence claim the plaintiff must prove the defendant's breach of duty of due care; however, under the doctrine of strict liability the plaintiff need only prove that the product was defective because it was unreasonably dangerous." Wagatsuma, 10 Haw. App. at 574, 879 P.2d at 587. Here, Defendant breached its duty to exercise reasonable care "to design and incorporate safety features in the RSDs to protect against foreseeable dangers, including but not limited to, the RSDs melting, overheating, igniting and/or causing fires." See Complaint, ECF No. 1 at ¶ 45. Defendant breached its duty to provide adequate warnings because Defendant "possessed knowledge that its RSDs were defective," yet "fail[ed] to warn Plaintiff of dangers associated with the RSDs that Plaintiff would not ordinarily discover – specifically, the risk that the RSDs could overheat, melt, ignite, and/or cause fires." See id. at ¶¶ 48-50.

Lastly, as to whether Plaintiff's injuries were proximately caused

by Defendant's breach, in the context of negligence claims, "negligent conduct is a legal cause of harm to another if (a) his or her conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his or her negligence has resulted in the harm." Kaho'ohanohano v. Dep't of Human Servs., 117 Hawai'i 262, 305, 178 P.3d 538, 581 (Haw. 2008) (citation omitted). Additionally, "under the doctrine of strict liability the plaintiff need only prove that the product was defective because it was unreasonably dangerous . . . proof of a product's defectiveness is interlaced with proof of causation." See Wagatsuma, 10 Haw. App. at 574, 879 P.2d at 587.

Here, the allegations in the Complaint establish that Defendant's breaches proximately caused Plaintiff's injuries. Plaintiff alleges that the RSDs were manufactured, marketed, and utilized as "fire safety devices" and that they were "defective and unreasonably dangerous" and ultimately "caused a total system failure and significant heat and/or fire damage." See Complaint, ECF No. 1 at ¶ 11. Additionally, had Defendant warned Plaintiff of "the risk that the RSDs could overheat, melt, ignite, and/or cause fires[,]" Plaintiff could have removed and replaced the RSDs sooner to prevent the total System failure. See id. at ¶ 50.

In sum, the Court FINDS that Plaintiff's allegations, taken as

true, are sufficient to establish Plaintiff's negligence and product liability

claims in Counts I through III.

### b. Warranty Claims (Counts IV, V, and VI)

Plaintiff also brings warranty claims for breach of the implied

warranty of merchantability under Hawaii Revised Statutes (HRS) § 490:2-

314 (Count IV), breach of the implied warranty for fitness for particular

purpose under HRS § 490:2-315 (Count V), and breach of express warranty

under HRS § 490:2-313 (Count VI).

Under Hawaii law, a "seller's warranty whether express or

implied extends to any person who may reasonably be expected to use,

consume or be affected by the goods and who is injured by breach of the

warranty."  Haw. Rev. Stat. § 490:2-318.  As the lessee of the System that

utilized the RSDs, Defendant's warranties therefore extend to Plaintiff.

The elements of a claim for breach of the implied warranty of

merchantability require a plaintiff to show "(1) the seller is a merchant of

such goods, and (2) the product was defective or unfit for the ordinary

purpose for which it is used."  Durrett v. Longs Drug Stores California,

L.L.C., No. CV 20-00144 ACK-KJM, 2021 WL 6494887, at *3 (D. Haw.

Apr. 9, 2021); Haw. Rev. Stat. § 490:2-314.  Defendant sufficiently pled

these elements in the Complaint.  See Complaint, ECF No. 1 at ¶ 57

(Defendant sold the RSDs), at ¶ 11 (Defendant's RSDs are "defective and unreasonably dangerous;" Defendant "marketed and sold [the RSDs] as fire safety devices"), at ¶ 31 (the RSDs "melted, overheated, combusted and/or ignited inside their casing, causing a critical failure in the System").

Similarly, to establish a breach of the implied warranty for fitness for particular purpose, a plaintiff must prove that: "(1) the plaintiff desired a product for a particular purpose; (2) the defendants had reason to know about this purpose; and (3) the product sold to the plaintiff failed to meet that purpose." Keahole Point Fish LLC v. Skretting Canada Inc., 971 F. Supp. 2d 1017, 1036 (D. Haw. 2013) (citation omitted). According to the Complaint, the particular purpose of the RSDs was "for integration into the Solar Panels in the System to function as safety mechanisms in compliance with the [National Electrical Code (NEC)]." See Complaint, ECF No. 1 at ¶ 63. Defendant had reason to know about this purpose "because that is the sole intended purpose of RSDs." See id. at ¶ 64. The RSDs failed to meet their purpose as safety mechanisms because they were defective and caused "significant heat and/or fire damage." See id. at ¶ 11.

Regarding the claim for breach of express warranty, such claim "focuses on (1) what the seller agreed to sell; and (2) whether the product delivered by the seller complied with the statements or description of what

13

the seller agreed to sell." <u>Torres v. Nw. Eng'g Co.</u>, 86 Hawaiʻi 383, 393, 949

P.2d 1004, 1014 (Haw. App. 1997); Haw. Rev. Stat. § 490:2-313(1).  Here,

Defendant breached the express warranty because the RSDs delivered by

Defendant were marketed as fire safety devices but in fact caused significant

heat and fire damage.  <u>See</u> Complaint, ECF No. 1 at ¶¶ 11, 23-26.

Specifically, Defendant "made affirmations of fact, promises, and/or product

descriptions . . . regarding its RSDs, including that they were safe, enhanced

the safety of photovoltaic systems, could be safely integrated into such

systems, and/or were compliant with the NEC."  <u>Id.</u> at ¶ 70.  However, the

RSDs were defective and unreasonably dangerous, and caused significant

damage.  <u>See</u> <u>id.</u> at ¶ 11.

   The Court FINDS that these factual allegations in the Complaint,

taken as true, establish Plaintiff's warranty claims in Counts IV, V, and VI.

   In sum, the Court finds that Plaintiff has adequately pled each of the

claims in the Complaint.  The Court therefore finds that this factor (merits of

Plaintiff's substantive claims) weighs in favor of default judgment.

### 3. Sufficiency of the Complaint

   As discussed above, the allegations in the Complaint are sufficiently

pled.  Therefore, this factor weighs in favor of default judgment as to all claims in

the Complaint.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176. Here, Plaintiff seeks $147,210.12 in damages. See Motion, ECF No. 15 at 2. As discussed below, the Court finds that Plaintiff is entitled to damages in this amount from Defendant. Insofar as the sum of money at stake is not too large or unreasonable in relation to Defendant's conduct, the Court finds that this factor weighs in favor of default judgment. See Langer v. Euclid Ave., LLC, No. 19-CV-2384 DMS (DDL), 2022 WL 3588320, at *4 (S. D. Cal. Aug. 22, 2022) ("Courts disfavor default judgment when 'the sum of money at stake is too large or unreasonable in relation to the defendant's conduct.'" (citation omitted)).

### 5. Possibility of Dispute Concerning Material Facts

As noted above, the well-pled factual allegations of the Complaint, except those relating to the amount of damages, will be taken as true. See TeleVideo Sys., Inc., 826 F.2d at 917-18. Defendant has been given a fair opportunity to defend this action and has not done so at all. Therefore, the Court finds that this factor favors default judgment.

### 6. Whether Default Was Due to Excusable Neglect

"The sixth Eitel factor considers whether defendant's default may have been the product of excusable neglect." Ho v. Tan Trinh, No. 8:16-CV-481-

JLS-JCGX, 2016 WL 11520810, at *5 (C.D. Cal. Oct. 27, 2016) (citation omitted).

"This factor favors a default judgment when the defendant has been properly

served or the plaintiff demonstrates that the defendant is aware of the lawsuit." Id.

(citation omitted).  As noted above, Defendant was properly served with the

Complaint.  See Proof of Service, ECF No. 11.  The Court therefore finds that this

factor favors entry of default judgment.

### 7. Policy Favoring Decisions on the Merits

Defendant's default renders a decision on the merits impractical, if not

impossible.  Under Rule 55, "termination of a case before hearing the merits is

allowed whenever a defendant fails to defend an action."  PepsiCo., Inc., 238

F. Supp. 2d at 1177; see Philip Morris USA, Inc. v. Castworld Prods., Inc., 219

F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b)

indicates that the seventh Eitel factor is not alone dispositive").  Here, Defendant

has failed to defend this action and has consequently rendered adjudication on the

merits before this Court impracticable.  This factor does not preclude the Court

from entering default judgment against Defendant.

### 8. Totality of Eitel Factors

The Court finds that the totality of the factors discussed above weighs

in favor of entering default judgment against Defendant as to all claims in the

Complaint.

16

## C. Remedies

Although a defendant's default establishes liability, it does not

establish all relief to which a plaintiff is entitled.  A plaintiff must provide evidence

to support its requested relief and that relief "must not differ in kind from, or

exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

Plaintiff seeks to recover (1) the cost of removing Defendant's RSDs and

reconfiguring the System ($84,607.00) and (2) the lost energy production costs

while the System was partially shut down and operating at a reduced energy level

($62,602.12).  See Motion, ECF No. 15-1 at 10-11.  Plaintiff also seeks pre and

post-judgment interest and leave to file a separate application for attorneys' fees

and costs.  See Motion, ECF No. 15-1 at 6.

Plaintiff provides sufficient evidence that it removed the RSDs and

reconfigured the System at a substantial cost.  See Santiago Decl., ECF No. 15-2 at

¶ 10; see also Proposal from Titrium3, ECF No. 15-12; Notice to Proceed, ECF

No. 15-13.  As detailed in the Capital and One Time Service Agreement, the cost

to "remove the Tigo module-level shutdown devices per Sunpower's Safety

notice" was $84,607.00.  Capital and One Time Service Agreement, ECF No. 15-

14 at 1-2, 12.  To date, all Defendant RSDs have been removed and replaced in the

System, and the System is functioning normally.  See Santiago Decl., ECF No. 15-

17

2 at ¶ 11.

Plaintiff also establishes the value of its lost energy production, which occurred while the System was partially shutdown and operating at a reduced energy level.  <u>See</u> Complaint at ¶ 41.  Exhibit L to the Santiago Declaration is a spreadsheet that documents the loss of power based on expected output of the System as of December 11, 2024, shortly prior to reconfiguring the System with replacement equipment.  <u>See</u> Santiago Decl., ECF No. 15-2 at 2; Ex. L, ECF No. 15-15.  Between April 25, 2024 through December 11, 2024, the total lost energy production cost was $62,603.12.  <u>See</u> Santiago Decl., ECF No. 15-2 at ¶ 13; Ex. L, ECF No. 15-15.

Accordingly, based on the declaration and exhibits attached to the Motion, Plaintiff establishes that it incurred a total loss of $147,210.12, which is comprised of the total cost of the replacing and reconfiguring the System ($84,607.00) plus the lost energy production resulting from the Failure ($62,603.12).  The Court therefore FINDS that Plaintiff has established Defendant is liable for damages in the amount of $147,210.12 for the claims asserted in the Complaint.  Thus, the Court RECOMMENDS that Plaintiff be awarded damages in the amount of $147,210.12.

Plaintiff also seeks "pre- and post-judgment interest at a rate allowable by law."  Motion, ECF Nos. 15 at 2, 15-1 at 6, 30; Complaint, ECF

No. 1 at 17.  However, Plaintiff provides no legal authority or analysis on its

entitlement to such interest or the applicable rates of interest.  Therefore, the Court

RECOMMENDS denying Plaintiff's request for pre- and post-judgment interest

without prejudice.

Lastly, Plaintiff seeks to recover its "reasonable attorneys' fees and

costs incurred by [Plaintiff] in this matter, the amount to be determined via

separate application by [Plaintiff]."  Motion, ECF Nos. 15 at 2, 15-1 at 6, 30;

Complaint, ECF No. 1 at 17.  The Court RECOMMENDS granting Plaintiff's

request for leave to file a separate application for fees and costs.  Any such

application shall include legal authority and analysis regarding Plaintiff's

entitlement to and the reasonableness of its attorneys' fees and costs.  Plaintiff

shall file its application regarding attorneys' fees and costs no later than **thirty (30)

days** after the District Judge adopts these Findings and Recommendations.

<u>CONCLUSION</u>

The Court FINDS and RECOMMENDS:

- GRANTING IN PART and DENYING IN PART Plaintiff's Motion for

  Default Judgment, ECF No. 15;

- Awarding damages in favor of Plaintiff and against Defendant in the

  amount of $147,210.12;

- Granting Plaintiff's request to submit a separate application for reasonable fees and costs within **thirty (30) days** of the District Judge's adoption of these Findings and Recommendations; and

- Denying Plaintiff's requests in all other respects.


IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, August 29, 2025.



Wes Reber Porter
United States Magistrate Judge

ABP Pearl Highlands LLC v. Tigo Energy, Inc.; CV. NO. 25-00154 JAO-WRP;
FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT.